FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT. WORTH DIVISION

2011 JUN 24  PM 1:19

CLERK OF COURT

Joyce Lee-Hickman #88369-079
NAME

P.O. Box 27137 Fort Worth, Texas 76127
ADDRESS or PLACE OF CONFINEMENT and PRISON NUMBER

Note:
It is your responsibility to notify
the clerk of Court in writing of
any change of address.

# United States District Court
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

Joyce Lee-Hickman

FULL NAME (Include name under which you were convicted)

Petitioner,

Warden Joseph Keffer

NAME OF WARDEN (or other authorized person having custody of petitioner)

Respondent,

CASE NO. **4-11 CV-43.9-A**

(to be supplied by the Clerk of
the United States District Court)

**PETITION FOR WRIT OF
HABEAS CORPUS BY A
PERSON IN FEDERAL CUSTODY**

### INSTRUCTIONS-READ CAREFULLY

This petition shall be legibly handwritten or typewritten, signed by the petitioner, under penalty of perjury. You must set forth CONCISELY the answer to each question in the proper space on the form. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury.

You must not attach separate pages to this petition except that ONE separate additional page is permitted in answering Question no. 9.

Upon receipt of a fee of $5.00 your petition will be filed if it is in proper order.

If you wish to seek leave to proceed *in forma pauperis* (without) paying the $5.00 filing fee and other court cost(s), then you must also submit an application to proceed in forma pauperis, setting forth information which establishes your inability to pay the fees and costs of the proceedings or give security therefor. If you wish to proceeed *in forma pauperis,* you must also have an authorized officer at the penal institution complete a certificate of inmate trust account as to the amount of money and securities on deposit to your credit in any account in the institution.

When the petition is completed, the *original and one copy* must be mailed to the Clerk of the United States District Court.

Only one sentence, conviction or parole matter may be challenged in a single petition. If you challenge more than one, you must do so by separate petitions.

Petitions which do not conform to these instructions will be returned with a notation as to deficiency.

PLEASE COMPLETE THE FOLLOWING: (check the appropriate number)

This petition concerns:

1. __**XX**__ a conviction.

2._____ sentence.

3._____ jail or prison conditions.

4._____ prison discipline.

5._____ a parole problem.

6._____ other.

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY

# PETITION

1. Place of detention  **Carswell Federal Medical Center**

2. Name and location of court which imposed sentence  **United States District Court**
**Southern District of Texas - Judge Lynn Hughes's Court**

3. The indictment number or numbers (if known) upon which, and the offense or offenses for which, sentence was imposed:

(a)  **Criminal Case # H-00-250**

(b)  **Criminal Case # H-01-376**

(c)

4. The date upon which sentence was imposed and the terms of the sentence:

(a)  **January 2002**

(b)

(c)

5. Check whether a finding of guilty was made:

(a) After a plea of guilty

(b) After a plea of not guilty  **xx**

(c) After a plea of nolo contendere

6. If you were found guilty after plea of not guilty, check whether that finding was made by:

(a) a jury  **xx**

(b) a judge without a jury

7. Did you appeal from the judgment of conviction or the imposition of sentence?

(xx)YES  ( ) NO

8. If you did appeal, give the following information for each appeal:

a. (1) Name of court  **Fifth Circuit Court of Appeals**

(2) Result  **affirmed in part, reversed and remanded in part**

(3) Date of result  **6-11-03**

(4) Citation or number of opinion  **CCA # 02-20174**

**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY**

(5) Grounds raised (list each)

(a) Faulty jury instructions - statutory language

(b) not given properly to jury

(c) Ex Post Facto Claim

(d) _____

b. (1) Name of court Federal District Court for the Southern District of Texas - Judge Lynn Hughes' Court

(2) Result affirmed

(3) Date of result 4-13-07

(4) Citation or number of opinion Civil Action #H-07-977

(5) Grounds raised (list each)

(a) ineffectiveness of counsel

(b) _____

(c) _____

(d) _____

CAUTION: If you are attacking a sentence imposed under a federal judgment, you must first file a direct appeal or motion under 28 U.S.C. Section 2255 in the federal court which entered judgment.

9. State CONCISELY every ground on which you claim that you are being held unlawfully. Summarize *briefly the facts supporting each ground. If necessary, attach a SINGLE page only behind this page.*

CAUTION: If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

a. Ground One Violation of Due Process Rights

_____

Supporting FACTS (tell your story *BRIEFLY* without citing cases or law)

CAUTION: You must state *facts not conclusions* in support of your grounds. A rule of thumb to follow is-who did exactly what to violate your rights at what time or place.

The penal statute that petitioner was charged with

is constitutionally vague; it did not satisfy due process

because it did not define the criminal offense (1) with

sufficient definiteness that ordinary people can understand

what conduct was prohibited; and (2) in a manner that does

not encourage arbitrary and discriminatory enforcement.

**b. Ground Two**        Petitioner was charged with honest services

health care fraud included in the indictment

Supporting *FACTS* (tell your story *BRIEFLY* without citing cases or law).

but no evidence was presented to the jury that would sub-

stantiate those charges - NO BRIBERY AND KICKBACKS were

presented in the evidence at trial.

**c. Ground Three**  Alternative theories were advanced by the Government

(1) money or property fraud  and (2) honest services fraud

Supporting *FACTS* (tell your story *BRIEFLY* without citing cases or law).

improper construction of the honest services component

of the federal ban on health care fraud; the government was

advancing an interpretation of §1347/1346 that has been rejected

by the Supreme Court's opinion in Skillings

**d. Ground Four**

Supporting *FACTS* (tell your story *BRIEFLY* without citing cases or law).

_____

_____

_____

_____

_____

10. Have you filed previous petitions for habeas corpus, motions under Section 2255 of Title 28
United States Code, or any other applications, petitions or motions with respect to this conviction.

YES (xx)                    NO ( )

11. If your answer to Question No. 10 was yes, give the following information as to each previous
motion or case:

a. (1) Name of court   Federal Court for the Southern District of
Texas - Judge Lynn Hughes' Court

(2) Nature of proceeding 28 U.S.C. §2255

(3) Grounds raised   ineffectiveness of counsel

_____

_____

_____

(4) Result  conviction affirmed

(5) Date of result  4-13-07

(6) Citation or number of any written opinions or orders entered pursuant to each disposition.

H-07-977

b. (1) Name of court _____

(2) Nature of proceeding _____

(3) Grounds raised _____

_____

_____

_____

(4) Result _____

(5) Date of result _____

(6) Citation or number of any written opinions or orders entered pursuant to each disposition.

_____

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY

12. If you did not file a motion under Section 2255 of Title 28, United States Code, or if you filed such a motion and it was denied, state why your remedy by way of such motion is inadequate or ineffective to test the legality of your detention:

_____ non-applicable _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

13. Are you presently represented by counsel?   Yes (  )   No ( x x )

If so, name, address and telephone number: ___ n/a _____

_____

Case name and court: ___ n/a _____

_____

14. If you are seeking leave to proceed *in forma pauperis*, have you completed an application setting forth the required information:

Yes (  )   No ( x x )

WHEREFORE, petitioner prays that the court grant petitioner relief to which he may be entitled in the proceeding.

Signed this ___21st___ day of ~~November~~ _____ , 20 ~~10~~ 11

_____
(Signature of petitioner)

## DECLARATION

I _____Joyce Lee-Hickman_____, declare under
penalty of perjury that I have read and subscribe to the above and state that the information
contained therein is true and correct to the best of my knowledge.

Executed on __~~11~~ 6/21/2011 ~~2010~~_____ at __Carswell Federal Medical Center__
               (date)                                      (place)

_____
(Signature of Petitioner)

Joyce Lee-Hickman

__Pro-se_____
(Signature of Attorney(if any))

Memorandum and Authorities for 28 U.S.C. 2255 /2241                    Page 1

Comes now, defendant, Joyce Hickman, herein referred to as petitioner, and for her Memorandum and Authorities in Support of her 28 U.S.C. 2241 petition which states:

That the instant petition is properly and timely filed before this Court.

JURISDICTION

This Court has jurisdiction to decide the petition for the Writ of Habeas pursuant to 28 USC 2255, in accordance with the post

conviction relief:

' An application for writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to

this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the Court

which sentenced him, or that such Court has denied him relief, unless it also appears that the remedy by motion is inadequate

or ineffective to test the legality of his detention'.

The Fifth Circuit of Appeals held in Requena-Reyes versus the United States, 243 F3d 893 at 901 (5th Circuit 2001) that Habeas Corpus may be utilized by the federal prisoners to challenge the legality of his or her conviction or sentence if h/she can satisfy the mandates of the so called ' savings clause' of statute governing motions to vacate, set aside or correct sentence, requiring showing that the remedy by motion is inadequate and ineffective 28 USCA 2241, 2255.

Also quoting from Requena Reyes, Id., ' the savings clause of the statute governing motions to set aside, vacate or correct sentence applies to a habeas claim (1) that is based on a retroactively applicable Supreme Court decision which establishes that petitioner may have been convicted of a non-existent offense and (2) that was foreclosed by circuit law at the time when the claim should have been raised in the petitioner's trial, appeal, or first motion to vacate, set aside, or correct sentence. 28 USCA 2255.

' Decisions of the Supreme Court holding that a substantive federal criminal statute does not reach certain conduct...necessarily carry a significant risk that a defendant stands convicted of ' an act that the law does not make criminal'. Bousley versus United States 523 US 614, 620, 118 S Ct 1604, 140 LEd2d 828 (1998) quoting from Davis versus United States 417 US 333, 346, 94 S Ct 2298, 41 LEd2d 109 (1974); also United States versus McKie 73 F3d 1149, 1151 (D.C. Circuit 1996),' A court's interpretation of a substantive criminal statute generally declares what the statute meant from the date of its enactment'.

' The actual innocence element has been foreshadowed in our savings clause jurisprudence'. See Kinder versus the United States, 222 F3d at 213, noting with approval that ' where the petitioner's case has been viewed in other circuits as falling within the savings clause, it was in part because the petitioner arguably was convicted for a nonexistent offense'.

In addition, the decision upon which petitioner is relying must be retroactively applicable upon collateral review, see Wofford, 177 F3d at 1244 which states that ' a claim is based on retroactively applicable Supreme Court decision; Dorsainvil 119 F3d at 251 where the government concedes that such a change should be applied retroactively'.

In Dorsainvil , 119 F3d 245, the petitioner encountered that where a successive petitioner claims that s/he has been convicted and punished for conduct that the law no longer makes criminal, the Due Process Clause is implicated because ' incarceration for acts that do not constitute a crime is patently offensive to the Constitution' Appellant's brief at 16.

Section 2241 states that ' writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district court and

any circuit judge within their respective jurisdictions' to prisoners in custody in violation of the Constitution or laws or treaties of the United States', 2241 (a( (c) (3).

Dorsainvil argues that if his claim that he has been convicted and imprisoned for conduct that is not criminal cannot be heard by the district court, then the 2255 as amended by the AEDPA is unconstitutional as a violation of the Due Process Clause of the Fifth Amendment or the Suspension Clause of Article I, section 9 of the Constitution. ' Where no other avenue of judicial review available for a party who claims that s/he is factually or legally innocent as a result of previously unavailable statutory interpretation, we would be faced with a thorny constitutional issue.'

The court in Dorsainvil's case decided not to consider the litany of potential alternatives, because they concluded that, under narrow circumstances, a petitioner in Dorsainvil's uncommon situation may resort to the writ of habeas corpus codified under 28 USC 2241.

Just as Dorsainvil claimed that he was imprisoned for conduct that the Supreme Court determined to be illegal, hence, he was convicted for a non existent offense, petitioner in this instant case claims that she is imprisoned illegally because the misconduct that she was charged with did not involve bribery and kickbacks.

Petitioner in this instant case has previously filed a 2255 motion to her sentencing court as set out in the petition. This sentencing court denied the 2255 Motion without an evidentiary hearing. Petitioner's application for Certificate of Appealability was also denied.

Since, the filing and subsequent denial of the 2255 motion, the United States Supreme Court rendered an opinion and decision interpreting 18 USC 1346 and its appropriate application to the fraud statute ( 1341 et seq.) and Congress' intent when enacting the statute. See Skilling versus the United states, 558 US ___130 S Ct 393, 175 L Ed 2d 267 (2009); Black versus the United States, 556 US __, 129 S Ct 2379, 173 Led2d 1391 (2009); Weyhrauch versus the United States, 557 US__, 129 S Ct 2863, 174 Led2d 575 ( 2009 ).

The Supreme Court's decision in Skilling, Black and Weyhrauch interpreting 1346 and its relation to 1341 et seq has made the conduct for which the petitioner is convicted and imprisoned non-criminal conduct.

The Supreme Court's interpretation of application 1346 declared Congress' intent for the statute and what the statute meant from the date of its enactment. See United States versus McKie, 73 F3d 1149, at 51 ( D.C. Cir 1996) stating that 'it is the court's responsibility to say what a statute means, and once the Court has spoken, it is the duty of the other courts to respect that understanding of the governing rule of law. A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction'. Rivers versus Roadway Express, 511 US 298, 128 LEd2d 274 at 289. See also Dotson versus United States, 87 Fed 682 (5th Circuit 1996); Roe versus Alabama, 43 F3d 574 (5th Circuit 1995); DeQuan Yu versus United States, 568 F3d 1328 (5th Circuit 2009).

' When this Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law'. Rivers, 289, Id.

Petitioner is innocent of the conduct for which she stands incarcerated as a result of the interpretation of 1346 and its relation to 1341 et seq. by the Supreme Court. Such incarceration ' inherently results in a complete miscarriage of justice'. Davis versus the United States, 417 US 333, 346, 41 LEd2d 109 (1974).

Petitioner is convicted and incarcerated on a non existent offense, so fundamental a defect in her conviction as being imprisoned for a non-existent offense clearly creates a complete miscarriage of justice.

The Fifth Circuit held in Requena Reyes, 904 Id.;

' The Savings Clause of 2255 applies to (i) that is based on a retroactively applicable Supreme Court decision which establishes that the petitioner may have been convicted of a non existent offense and (ii) that was foreclosed by circuit law at the time when the claim should have been raised in the petitioner's trial, appeal or first 2255 motion. Under these circumstances, it can fairly be said, in the language of the savings clause, that ' the remedy by a successive 2255 motion is inadequate or ineffective to test the legality of the petitioner's detention'.

The claim of actual innocence of the Supreme Court's decision in Skillings, Weyhrauch and Black, Id. clearly supports this

Court's jurisdiction in this instant case. Thus the issues raised in the 2241 petition are properly before the Court in the District in which the petitioner is incarcerated. Petitioner is incarcerated at Carswell Federal Medical Center - Fort Worth, Texas.

### ACTUAL INNOCENCE

On June 24, 2010, the United States Supreme Court interpreted 18 USC 1346 and its proper application to the fraud statutes, 18 USC 1341 et seq, finding that 1346 which is the definition of 'scheme or artifice to defraud' in the fraud statutes 1341 et seq proscribes fraudulent deprivations of the ' intangible right to honest services'. The Supreme Court held that:

> ' 1346 properly confined covers only bribery and kickback schemes'

The Supreme Court specifically noted that the clarification included 'fraud statutes', 18 USC 1341 et seq and further elaborated that ' no misconduct other than bribes and kickbacks falls within 18 USC 1346's province', meaning that the new interpretation of ' scheme or artifice to defraud ' applies to all of 1346 province ' including 1347 - healthcare fraud '.

These holdings were in the Skilling versus United states, 558 US__, 129 S Ct 2379, 173 LEd2d 1391 (2009). In making its findings, the United States Supreme Court reviewed the origin and the a subsequent application of the honest services doctrine.

' In a series of decisions beginning in the 1940s, the Courts of Appeals, one after another, interpreted the mail fraud statute's prohibition of ' any scheme or artifice to defraud' to include deprivations not only of money or property, but also of intangible rights. Shushan versus US, 117 F2d 110, which stimulated the development of the ' honest services ' doctrine. Unlike traditional fraud, in which the victim's loss of money or property supplied the defendant's gain, with one mirror image of the other, the honest services doctrine targeted corruption and lacked similar symmetry. While the offender profited, the betrayed party suffered no deprivation of money or property; instead the third party, who had not been deceived, provided the enrichment. Even if the scheme occasioned a money or property gain for the betrayed party, courts reasoned, actionable harm lay in the denial of that party's right to the offender's honest services... By 1982, all Courts of Appeals had embraced the honest services theory of fraud'.

' In 1987, the Supreme Court halted the development of the intangible rights doctrine in McNally versus United States, 483 US 350, 360. 107 S Ct 2875, 97 LEd2d 292, which held that the mail fraud statute was limited in scope to the protection of property rights. ' If Congress desires to go further', the Court stated, ' it must speak more clearly'.

'Congress responded the next year by enacting 1346, which provides: ' For the purposes of chapter of the U.S. Code that prohibits, inter alia, mail fraud, 1341 and wire fraud, 1343, the term scheme or artifice to defraud includes a scheme or artifice to deprive another of the intangible right of honest services'.

In interpreting 1346 and Congress' intent for this statute, the Supreme Court stated:

' There is no doubt that Congress intended 1346 to refer to and incorporate the honest services doctrine recognized in the Court of Appeals' decisions before McNally derailed the intangible rights theory of fraud'.

The Supreme Court in Skilling:

' that 1346 criminalizes only bribes and kickbacks core of pre-McNally case law'
' Because Skilling 's alleged misconduct entailed no bribe or kickback, it does not  fall within 1346's proscription'.

TRULINCS 88369079 - HICKMAN, JOYCE LEE - Unit: CRW-G-A
---------------------------------------------------------------------------------------------

FROM: 88369079
TO: Curley, Ceola
SUBJECT: 2nd Section - Skillings 2241
DATE: 6/20/2011 5:11:22 PM

In US versus Weyhrauch 548 F3d 1237, the Court stated that , ' Congress in 1988 chose to " speak more clearly " by enacting

USC 1346, specifying that for the purposes of the mail, wire and bank fraud statutes, " the term 'scheme or artifice to

defraud' includes a scheme or artifice to deprive another of the intangible right of honest services". See Williams 441 F3d at

721-22 (holding that Congress restored the pre-McNally landscape by passing 1346). Unfortunately, Congress did not define

the concept of honest services' in 1346, thereby creating some confusion over the reach of the statute. See United States

versus Urcivoli 513 F3d 290, 294 (1st Circuit 2008) (The central problem is that the concept of 'honest services' is vague and

undefined by the statute. So, as one moves beyond core misconduct covered by the statute - e.g. taking a bribe for a

legislative vote - difficult questions arise giving coherent content to the phrase through judicial glosses).

Definition of scheme or artifice to defraud - for the purpose of this Chapter (Chapter 63) - [ 18 USCS 1341 et seq], the term '

scheme or artifice to defraud includes a scheme or artifice to deprive another of the intangible right of honest services.' In

addition, in response to McNally, Congress broadened the scope of mail and wire fraud {569 F3d 845} statutes by enacting 18

USC 1346. That section provides:

For the purposes of this chapter [Chapter 63], the term ' scheme or artifice to defraud includes a scheme or

artifice to deprive another of the intangible right to honest services - 18 USC 1346. 1346 brought schemes to deprive another

of honest services within the scope...section 1346 does not create a separate offense but expands the definition of scheme

or artifice to defraud '. Therefore, even though the petitioner was not charged with 1346, 1346 is implied in the statute,

since the language ' scheme or artifice to defraud' is the core concept of 1341through 1347.

With the obvious assistance of Devitt and Blackmar's authoritative work, Federal Jury Practice and Instructions, the Court

paraphrased and enlarges upon the statutes, referring first to the mail fraud statute and then in the identical language to the

wire fraud statute...( Starr 816 F2d 94- 2nd Circuit 1987)

All the statutes that fall under the province of 1346, including 1341 through 1347, include identical language - 'a scheme or

artifice to defraud'.

In the United States versus Martha Bell, Appellant in No#06-4649-282 Fed Appx 184; 2008 U.S. Lexis 12194, petitioner Martha Bell
was convicted of knowingly engaging in a scheme with the specific intent to defraud Medicare and Medicaid under 18 USC 1347.
Martha Bell's charges did not include the additional statute 1346. However, since 1346 is implied in 1347, the District Court charged
the jury as follows:

A scheme or artifice to defraud includes a scheme to deprive another person of intangible, as well as tangible rights. Intangible
property rights mean anything valued or considered to be a source of wealth, including for example, the right to honest services

and the right to decide how one's money is spent.

The appellant counsel objected to the charge claiming that ' the instruction amended the indictment by enlarging the basis for conviction beyond the charge specified in the indictment. The trial counsel should have objected because this charge is not appropriate unless the defendant and the victim have a fiduciary relationship - United States versus Herron 825 F2d 50, 54 (5th Circuit 1978)'.

The District Court responded by arguing that the instructions that were given were derived from 2A Federal Jury Practice and Instruction 47.13. At a certain time, the United States Court of Appeals for the Third Circuit had not addressed the issue of whether the existence of a fiduciary relationship was an element of honest services fraud. However, at the time of trial, the Court of Appeals for the Eighth Circuit and the Court of Appeals for the Second Circuit had both concluded that the existence of a fiduciary relationship was not an element of honest services fraud. See United States versus Ervasti, 201 F3d 1029, 1036 (8th Circuit 2000) and United States versus Sancho 157 F3d 918, 921 (2d Circuit 1998).

In the government's response motion to Martha Bell's 2255, the government reiterated that 'the honest services' term was a 1 clause reference - as an example of intangible property - in the Court's 3 page instruction on 'scheme or artifice to defraud' (8-27-05, pp 25-27). This instruction was proposed by the government (proposed instruction No. 9) and originated in 2A Federal Jury Practice and Instruction Inst. 47.13. It was approved at the charge conference (8-18-05, p.137) and in the government's view, is a correct statement of law. Health care fraud is defined as ' a scheme or artifice... to defraud...' 18 U.S.C. (1347 (1). (see Exhibit AA)

As it relates to the petitioner's case, there were several documents submitted by the government and the Court that made mention of health care fraud and how the jury was to be instructed on the statute. They were as follows:

Proposed Jury Instructions of the United States - Health Care Fraud Statute: 1347
The indictment charges thirty two counts of health care fraud in violation of Title 18 United States Code, Section 1347. The statute makes it a crime for any person who:..knowingly and willfully executes, or attempts to execute, a scheme or artifice - (1) to defraud any health care benefits program; ir (2) to obtain by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefits program..In connection with the delivery of or the payment for health care benefits items or services...   (Exhibit A)

The Elements of the Health Care Fraud Crime. The elements of health care fraud were submitted as follows:
' In order to find the defendant guilty of Health Care Fraud, you must find beyond a reasonable doubt each of the following elements of the crime:
1. That the defendant executed or attempted to execute a scheme or artifice...
2. That the scheme or artifice to defraud was to defraud a health care benefits program...
3. That the scheme was in connection with delivery or payment of health care benefits, items or services; and
4. That the defendant acted knowingly and willfully....   (Exhibit B )

Additionally, in the Special Instructions to the Jury, the judge instructed the jury to ' find beyond a reasonable doubt that (a) the defendant knowingly devised a scheme to defraud people substantially similar to the scheme described in the indictment; and (b) the use of the plan was closely related to the health care benefits programs' .   (Exhibit C )

In the United States versus Brumley, 116 F3d 728 at 742 (5th Circuit 1997), the Court set out the legislative History of 1346

whereby it was noted that remarks of the House of Representative Conyers regarding various provisions ... Representative

Conyers stated:

' The amendment adds a new section to 18 USC 63 that defines ' scheme or artifice to defraud to include a scheme or artifice

to defraud another of the intangible right to honest services. Thus it is no longer necessary to determine whether or not the

scheme or artifice to defraud involved money or property'.

In United States versus Black, 330 F3d 596 (7th Circuit 2008), Black was charged with mail fraud (18 USC 1341), however, the

jury was instructed that it could convict the defendant on the deprivation of the intangible right to honest services, while the

------------------------------------------------------------------------------------------------------

evidence presented to the jury established fraud by theft of money or property. The United States Supreme Court reversed

Black's conviction holding:

' We decided in Skilling that 1346 properly confined, criminalizes only schemes to defraud that involve bribes or kickbacks...'

See Black versus the United States, 556 US___, 139 S Ct 2379, 173 LEd2d 1291 (2009).

The Fifth Circuit Court of Appeals stated in the United States versus Skilling, 554 F3d 529 at 543 (5th Circuit 2009):

' Both 1341 and 1343 read, " Whoever having devised or intending to devise any scheme or artifice to defraud, or for

obtaining money or property...'. Courts read the disjunctive between ' to defraud' and ' for obtaining money or property' as

indicating two separate objects of the scheme or artifice '.

' Money or property was one object, and courts construed ' to defraud' to include schemes whose object was the deprivation of

intangible rights such as honest services'

It is clear that ' a scheme or artifice to defraud' means the ' deprivation of the intangible right to honest services', which the

Supreme Court has held involves ONLY bribery and kickbacks. See also, United States versus Rybicki, 354 F3d 124 (2nd

Circuit)

The scheme or artifice to defraud includes a scheme to deprive another person of intangible, as well as intangible property

rights. Intangible property rights means anything valued or considered to be a source of wealth, including for example, the

right to honest services and the right to decide how one' s money is spent.

' The Supreme Court specifically noted that the clarification included fraud statutes, 18 USC 1341 et seq. and further

elaborated that no misconduct other than bribes and kickbacks falls within 1346's province; meaning that the new

interpretation of ' a scheme or artifice to defraud' applies to all of 1346's province.

Petitioner stands incarcerated on a non-existent criminal offense and her actual innocence to scheme to defraud  is evident

and entitles her to immediate release from imprisonment and the reversal of her convictions.

prior to the Court's direction that:  "You should judge the testimony of defendant Martha Bell in the same manner as the testimony of any other witness in this case" (8/22/05, pp. 13-15). The latter instruction regarding defendant's credibility was derived from 1A Federal Jury Practice and Instructions, Inst. 15.12, presented to the Court as Government's Proposed Jury Instruction No. 7, and approved at the charge conference (8/18/05, p. 137).  The government avers that there was no error in this instruction.  (The language presented in the O'Malley formulation is consistent with the Third Circuit Model Criminal Jury Instruction 4.28 (Defendant's Testimony) which concludes:  "You should examine and evaluate (his) (her) testimony just as you would the testimony of any witness.")

In Section F (p. 37), defendant claims that trial counsel should have objected to the honest services instruction, alleging it is not appropriate unless the defendant and victim have a fiduciary relationship.  The "honest services" term was a 1-clause reference - as an example of intangible property - in the Court's 3-page instruction on "scheme or artifice to defraud" (8/22/05, pp. 25-27).  This instruction was proposed by the government (proposed instruction No. 9) and originated in 2A Federal Jury Practice and Instruction, Inst. 47.13.  It was approved at the charge conference (8/18/05, p. 137) and, in the government's view, is a correct statement of the law.  Health care fraud is defined as "a scheme

35

Exhibit AA

and artifice . . . to defraud . . ." (18 U.S.C. § 1347(1)). That term is, in turn, defined, for purposes of the fraud section (Chapter 63) of Title 18 to include "a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. There is no qualifying language in § 1346 providing that it applies only where a victim and the defendant have a fiduciary relationship; and the government is aware of no Third Circuit case law construing § 1346 in this manner.

At Section G (p. 37), defendant claims that counsel should have objected to the Court's inclusion of the term "reckless indifference" in describing false pretenses. This instruction was likewise derived from 2A Federal Jury Practice and Instructions, Inst. 47.13 (Government's Proposed Jury Instruction No. 9). The government notes that defendant cites no authority for her contention that "fraudulent pretenses" may not include statements made with "reckless indifference" as to their truthfulness. Moreover, as set forth in both the O'Malley instruction and the one given by this Court, misrepresentations made with "reckless indifference" satisfy the statutory definition only where they contain a material fact and are made or used "with the intent to defraud." The government submits that the instruction given was correct.

At Section H (p. 38), defendant claims that appellate counsel was ineffective in failing to appeal each of the previously

36

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

JUL 0 6 2001  AM

MICHAEL N. MILBY, CLERK OF COURT

**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| **v.** § | **CRIMINAL NO. H-00-250** |
| § | **CRIMINAL NO. H-01-376** |
| **JOYCE LEE HICKMAN** § | |
| **Defendant** § | |

**PROPOSED JURY INSTRUCTION**
**OF THE UNITED STATES**

Now comes the United States of America, by the undersigned Assistant United

States Attorney and submits the following Jury Instruction on the Health Care Fraud

Statute.

<u>Health Care Fraud Statute: 18 U.S.C. § 1347</u>

The Indictment charges thirty-two counts of  Health Care Fraud in violation of
Title 18, United States Code, Section1347.  That statute makes it a crime for any
person who:

> . . . knowingly and willfully executes, or attempts to execute, a scheme or
> artifice –
>
> (1) to defraud any health care benefit program; or
>
> (2) to obtain by means of false or fraudulent pretenses, representations,
> or promises, any of the money or property owned by, or under the custody
> or control of, any health care benefit program
>
> In connection with the delivery of or payment for health care benefits,
> items, or services.

The term "Health care benefit program" is defined at Title 18 United States Code,
Section 24(b) as "any public or private plan or contract, affecting commerce,
under which any medical benefit, item, or service is provided to any individual,
and includes any individual or entity who is providing a medical benefit, item or



1

43

221

service for which payment may be made under the plan or contract." In this case, the Indictment alleges that Medicare, Medicaid, Guardian Insurance Company of America, Texas Universities Health Plan, and CNA Insurance are health care benefit programs.

This instruction may be supplemented with additional instructions, if necessary.

Respectfully submitted,

GREGORY A. SERRES
UNITED STATES ATTORNEY

By:     Amy M. Lecocq
        Assistant United States Attorney

Certificate of Service

The undersigned Assistant United States Attorney certifies that the above Proposed Jury Instruction of the United States was sent by fax to Michael Wayne Ramsey at 713 523-7887, attorney for Joyce Lee Hickman, on this, the 6th day of July, 2001.

2

220



United States Courts
Southern District of Texas
FILED

JUL 1 8 2001

Michael N. Milby, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-00-250 |
| | § | CRIMINAL NO. H-01-376 |
| JOYCE LEE HICKMAN | § | |
| | § | |

## ELEMENTS OF HEALTH CARE FRAUD CRIME

The United States submits the following elements for the health care fraud crime,

for the purposes of instructing the jury at the close of evidence.

### Elements of the Health Care Fraud

In order to find the defendant guilty of health care fraud, you must find beyond a reasonable doubt each of the following elements of the crime.

1. That the defendant executed or attempted to execute a scheme or artifice;

2. That the scheme or artifice to defraud was to defraud a healthcare benefit program;

3. That the scheme was in connection with the delivery or payment of health care benefits, items or services; and

4. That the defendant acted knowingly and willfully.

Respectfully submitted,

Amy M. Lecocq
Assistant United States Attorney

### Certificate of Service

A copy of the foregoing was served on defendant's attorney Michael Ramsey by hand on this, the 18th day of July, 2001.

54 WH

UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

UNITED STATES COURTS
SOUTHERN DISTRICT O. TEXAS
FILED

JUL 2 4 2001

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CRIMINAL CASES H-00-250 |
| | § | 01-376 |
| JOYCE LEE HICKMAN, | § | |
| | § | |
| Defendant. | § | |

## Special Instructions to the Jury

1. In this case, the charges against Hickman are in two indictments. That there are two sets of charges does not mean anything; do not discuss the peculiar way the paperwork happened to have been done. The counts will be referred to as I-1 through I-17 (H-00-250) and II-1 through II-15 (H-01-376).

2. To establish that a defendant is guilty of health care fraud, the government must prove three things beyond a reasonable doubt:

   A. The defendant knowingly devised a plan;

   B. The purpose of the defendant's plan was to defraud—trick or cheat—a health care benefits program out of a direct economic benefit like money or property; and

   C. The defendant used or tried to use the plan to get paid from a health care benefits program.

3. Knowingly means the defendant acted with the specific intent to trick or cheat, ordinarily with the purpose of causing a financial loss to another.

4. A "health care benefit program" is a public or private operation furnishing people with medical money, medicine, equipment, or services. This includes companies that manage, pay, or record medical money, medicine, equipment, or services.

5. What must be proved beyond a reasonable doubt is that (a) the defendant knowingly devised a scheme to defraud people substantially similar to the scheme described in the indictment; and (b) the use of the plan was closely related to health care benefit programs.

**EXHIBIT G**

6.    A statement is fraudulent if it (a) is about a material fact, (b) is known to be untrue
or is made with reckless indifference about its truth, and (c) is made with the
intent that another rely on it to his harm.  A statement may be untrue when it is a
half truth or otherwise effectively conceals a material fact.  A fact is material when
it would be important to a reasonable person in deciding whether to engage in a
transaction.

_____

Lynn N. Hughes
United States District Judge

**EXHIBIT C**

- 2 -

351

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

APR 2 4 2000

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | MICHAEL N. MILBY, CLERK OF COURT |
| | § | |
| V. | § | |
| | § | CRIMINAL NO. H-00-250 |
| JOYCE LEE HICKMAN | § | |
| a.k.a. JOYCE SAUNDERS AND | § | |
| TMM MEDICAL GROUP  AND | § | |
| TOTAL MEDICAL MANAGEMENT | § | |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

A.        INTRODUCTION TO COUNTS ONE THROUGH THREE

At all times material to this indictment:

1.    The Medicare program was a federally funded health insurance program to

provide medical care to people over 65 and certain others with disabilities.  The

Medicare program is comprised of two parts; Part A (Hospital Insurance) and Part

B (Medical Insurance).  The Medicare program was administered by the Health

Care Financing Administration (HCFA), an agency of the U.S. Department of

Health and Human Services.  In the state of Texas, HCFA contracts with

Trailblazer Health Enterprises, LLC (formerly Texas Blue Cross and Blue Shield)

to administer the day-to-day operations of the Medicare Part B program, with the

exception of the durable medical equipment (DME) program.  DME operations are

Exhibit D

1

administered by DME regional centers (DMERCs). The DMERC responsible for Texas is Palmetto Government Benefits Administrators (Palmetto GBA).

2.    The Texas Medicaid program was a cooperative federal-state program to provide medical assistance to the indigent. The Texas Medicaid program is administered by the Texas Health and Human Services Commission (THHSC). THHSC contracts with the National Heritage Insurance Company (NHIC) to process claims submitted by health care providers.

3.    Total Medical Management was a durable medical equipment (DME) provider under the Medicare and Medicaid programs.

4.    Total Medical Management also operated as a billing company which submitted claims to Medicare, Medicaid and other medical insurance companies on behalf of physicians who retained Total Medical Management as their billing service.

5.    TMM Medical Group was purportedly a medical clinic located at 8120 Corinth, Houston, Texas. In fact, from December 1996 until January 1999, TMM Medical Group had only office space, had no physicians in its employ and neither examined or treated patients.

TMM Medical Group applied for and received group provider numbers from the Medicare and Medicaid programs as a medical clinic. TMM Medical Group also applied for and received provider numbers for two physicians purportedly in their employ.

6.    Joyce Lee Hickman was the true owner and operator of both Total Medical

Exhibit D

2

Management and TMM Medical Group. Her father, Joe Payton Lee, is listed as the owner and president of TMM Medical Group on the Medicare and Medicaid applications for provider numbers.

7.    Medicare and Medicaid providers were required to complete and submit a Health Insurance Claim form ("HCFA Form 1500"). Each HCFA Form 1500 contained a certification, signed by the provider, which stated that the services reflected on the form had been provided.

8.    Medicare and Medicaid also permit the use of an electronically submitted HCFA Form 1500. The use of an electronically submitted HCFA Form 1500 requires a certification, signed by the provider and kept by the carrier, which states that all claims submitted in this manner correctly reflect the services provided to the Medicare and Medicaid beneficiaries. Such a certification was on file for Joyce Lee Hickman and her companies.

9.    Medicare and Medicaid requires certificates of medical necessity (CMN's) for certain DME items such as seat lift chairs, mattresses, etc. These CMN's must be completed and signed by a physician. The provider maintains these CMN's to support their claim and makes them available to Medicare upon request.


Exhibit D


3

## COUNTS ONE THROUGH THREE
(Health Care Fraud - 18 USC 1347)

B.                        The Scheme to Defraud Regarding DME

10.     Beginning on or about March 7, 1995, and continuing to on or about February

1997, in the Southern District of Texas, and elsewhere, and within the jurisdiction of the

Court, Defendants,

**JOYCE LEE HICKMAN**
**a.k.a. JOYCE SAUNDERS and**
**TOTAL MEDICAL MANAGEMENT**

did devise and intend to devise a scheme and artifice to defraud the Medicare program, a

health care benefit program administered by the United States Department of Health and

Human Services, in connection with the payment for health care services, and for

obtaining money by means of false and fraudulent pretenses, representations, and by

concealing material facts.

11.     It was further part of the scheme and artifice to defraud the Medicare program to

submit claims to the Medicare program for durable medical equipment (DME) provided

to Medicare beneficiaries who did not need, and whose physicians did not prescribe, the

DME.  In addition, some claims were submitted for DME which was never provided to

the beneficiary.

12.     It was further part of the scheme and artifice to defraud the Medicare program

that Joyce Lee Hickman to applied and received for a Medicare supplier number from

Palmetto GBA.

Exhibit D
4

13.     It was further part of the scheme and artifice to defraud the Medicare program for Joyce Lee Hickman and other unknown employees of Total Medical Management to approach beneficiaries and offer to supply them with DME at no cost to the beneficiary. Information needed to submit claims to the Medicare program, such as names, addresses, dates of birth, Medicare numbers, etc., was obtained from the beneficiary and soon thereafter some of the beneficiaries would receive the DME.

14.     It was further part of the scheme and artifice to defraud the Medicare program that Joyce Lee Hickman and other employees of Total Medical Management would cause to be submitted and would submit claims to Medicare for this DME listing one of three doctors as the referring physician when in fact and in truth, Joyce Lee Hickman knew that none of these physicians had authorized or prescribed these DME items billed.

15.     It was further part of the scheme and artifice to defraud the Medicare program that Joyce Lee Hickman would produce forged CMN's to the Medicare program when asked for documentation on the claims that Medicare chose for review.

16.     It was further part of the scheme and artifice to defraud the Medicare program that Joyce Lee Hickman caused claims in excess of $1 million to be submitted to Medicare. As a result, Medicare paid Total Medical Management over $300,000.

Exhibit D

C.        The Execution of the Scheme to Defraud Regarding DME

16.        From on or about March 7, 1995 through February 1997, in the Southern District

of Texas, and elsewhere, and within the jurisdiction of this Court, Defendants,

**JOYCE LEE HICKMAN**
a.k.a. JOYCE SAUNDERS and
**TOTAL MEDICAL MANAGEMENT**

for the purpose of executing the scheme and artifice to defraud the Medicare program, a

health care benefit program administered by the United States Department of Health and

Human Services, in connection with the payment for health care services, and for

obtaining money by means of false and fraudulent pretenses or representations, did

knowingly and willfully, execute a scheme to defraud by submitting claims to the

Medicare program for DME items which were not authorized or prescribed by a

physician as required by the Medicare program, by listing a referring physician on the

claim when neither that physician, nor any other physician, had authorized or prescribed

such DME, for the following dates of service:

| Ct. | Beneficiary | Claim Number | Date | Amt. Pd. | False Statement |
|-----|-------------|--------------|------|----------|-----------------|
| 1 | Lee Perkins | 952778110940 00 | 9/21/95 | $3,820.54 | Items not supplied |
| 2 | Joyce Richardson | 961168189520 00 | 4/22/96 | $1289.80 | Items not supplied |
| 3 | Agatha Moore | 961168189510 00 | 4/22/96 | $1289.80 | Items not supplied |

In violation of 18 United States Code, Section 1347.

Exhibit D

6

## COUNTS FOUR THROUGH SEVENTEEN
### (Health Care Fraud - 18 USC 1347)

D.          The Scheme to Defraud Regarding Hospital Visits

17.     Beginning on or about December 22, 1996, and continuing to on or about May

1999, in the Southern District of Texas, and elsewhere, and within the jurisdiction of this

Court, Defendants,

### JOYCE LEE HICKMAN
#### a.k.a. JOYCE SAUNDERS and
#### TOTAL MEDICAL MANAGEMENT and
#### TMM MEDICAL GROUP

did devise and intend to devise a scheme and artifice to defraud the Medicare and

Medicaid programs, health care benefit programs administered by the United States

Department of Health and Human Services, in connection with the payment for health

services, and for obtaining money by means of false and fraudulent pretenses,

representations and by concealing material facts.

18.     The scheme to defraud consisted essentially of a plan to submit claims to the

Medicare program for physician inpatient hospital visits to Medicare and Medicaid

beneficiaries that were not performed.

19.     It was further part of the scheme and artifice to defraud the Medicare and

Medicaid programs that Joyce Lee Hickman would operate Total Medical Management

as a billing company. In this manner she had access to numerous Medicare and

Medicaid beneficiaries' names and identifying information which she used to create false

and fraudulent Medicare and Medicaid claims.

Exhibit D

7

20.    It was further part of the scheme and artifice to defraud the Medicare and Medicaid programs that Joyce Lee Hickman applied for and received Medicare and Medicaid provider numbers for TMM Medical Group, and for two physicians purportedly working for TMM Medical Group.

21.    It was further part of the scheme and artifice to defraud the Medicare and Medicaid programs that Joyce Lee Hickman represented that these two physicians worked for TMM Medical Group, when in truth and in fact, Joyce Lee Hickman knew neither of these two physicians was employed by or worked for TMM Medical Group.

22.    It was further part of the scheme and artifice to defraud the Medicare and Medicaid programs that Joyce Lee Hickman submitted and caused to be submitted claims to the Medicare and Medicaid programs for inpatient hospital visits purportedly provided by these two physicians when in truth and in fact, Joyce Lee Hickman knew such inpatient hospital visits had not been provided.

23.    It was further part of the scheme and artifice to defraud the Medicare and Medicaid programs that Joyce Lee Hickman submitted and caused to be submitted numerous claims for services purportedly provided on the same day when the time needed to perform those services exceeds twenty-four hours [per day]. A review was conducted of claims submitted for fifty-two dates of service [per day]. Under one physician's provider number, there were at least four dates which had claims for over twenty-four hours of services. The other physician's provider number had at least ten dates on which the amount of time included on all the claims exceeded twenty-four hours [per day].

Exhibit D

24.     It was further part of the scheme and artifice to defraud the Medicare and Medicaid programs that Joyce Lee Hickman submitted and caused to be submitted claims for beneficiaries who were deceased. A review of 85 randomly chosen beneficiaries revealed that Hickman submitted claims for alleged services provided to a deceased beneficiaries at least five times.

25.     It was further part of the scheme and artifice to defraud the Medicare and Medicaid programs that Joyce Lee Hickman submitted and caused to be submitted false and fraudulent claims for over $12 million to the Medicare and Medicaid programs from 1997 to 1999. The Medicare and Medicaid programs paid TMM Medical Group over $5 million as a result of these claims.

E.      <u>The Execution of the Scheme to Defraud Regarding Hospital Visits</u>

26.     On or about the dates listed below, in the Southern District of Texas, and elsewhere, and within the jurisdiction of this Court, Defendants,

JOYCE LEE HICKMAN
a.k.a. JOYCE SAUNDERS and
TOTAL MEDICAL MANAGEMENT and
TMM MEDICAL GROUP

for the purpose of executing the scheme and artifice to defraud the Medicare and Medicaid programs, (health care benefit programs administered by the United States Department of Health and Human Services), in connection with the payment for health care services, and for obtaining money by means of false and fraudulent pretenses, representations, did knowingly and willfully, execute a scheme to defraud by submitting the following claims for services to the Medicare and Medicaid programs for inpatient

Exhibit D

9

hospital visits by physicians which were never rendered on the following dates of service:

| Ct. | Patient | Claim Number | Dates of Service | Amt Pd. | False Representation |
|-----|---------|--------------|------------------|---------|----------------------|
| 4 | Frankie Carson | 2298056846560 | 12/31/96 - 3/28/97 | $4,449.79 | Services Not Rendered |
| 5 | Rayford Pryor | 2297339670280 | 1/3/97 - 3/30/97 | $4,723.40 | Services Not Rendered |
| 6 | Agatha Moore | 2898194001580 | 1/31/97 - 4/2/97 | $2,976.49 | Services Not Rendered |
| 7 | Ashley Steptoe | 201397324013657 | 9/15/97 - 9/27/97 | $731.72 | Services Not Rendered |
| 8 | Ebony Jackson | 201397324007519 | 9/30/97 - 10/13/97 | $784.12 | Services Not Rendered |
| 9 | Susie Allen | 2298093692310 301098107016476 | 10/2/97 - 12/31/97 | $6,172.80 | Services Not Rendered |
| 10 | Passion McGuire | 201397324013658 | 10/11/97- 10/23/97 | $731.72 | Services Not Rendered |
| 11 | Marguerit Durall | 2298092383660 301098106002085 | 10/15/97- 12/31/97 | $5,299.98 | Services Not Rendered |
| 12 | Chevalier Paige | 201398029008003 | 12/1/97 - 12/12/97 | $679.32 | Services Not Rendered |
| 13 | Millie Mae Jones | 2298308269290 301898322006023 | 5/31/98 - 8/2/98 | $4,655.65 | Services Not Rendered |
| 14 | Lee Perkins | 2298285234680 | 6/29/98 - 8/31/98 | $3,781.53 | Services Not Rendered |
| 15 | Pearl Addison | 201398310001018 | 9/11/98 - 9/23/98 | $710.23 | Services Not Rendered |
| 16 | Mildred Smith | 2299074413460 301899088029028 | 10/31/98 - 1/10/99 | $4,062.36 | Services Not Rendered |

Exhibit D

10

| 17 | Gracie Ramirez | 2299084740510 | 1/2/99 - 3/3/99 | $2,686.35 * | Services Not Rendered |

In violation of 18 United States Code, Section 1347.

### COUNTS EIGHTEEN THROUGH TWENTY-ONE
(Money Laundering - 18 USC 1957)

27.    On or about the dates below, in the Southern District of Texas, and elsewhere, and within the jurisdiction of this Court, Defendants,

JOYCE LEE HICKMAN
a.k.a. JOYCE SAUNDERS and
TOTAL MEDICAL MANAGEMENT and
TMM MEDICAL GROUP

knowingly engaged or attempted to conduct the following described financial transactions affecting interstate commerce, to wit: the following described withdrawals of funds from Sterling Bank, account number 21021478, which involved the proceeds of a specified unlawful activity, that is, health care fraud, in violation of Title 18, United States Code Section 1347, as charged in counts one through twenty-four of this indictment, knowing that the transactions involved proceeds from a criminal offense that was of a value greater than $10,000, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions, that is funds in the stated amounts, represented the proceeds of some form of specified unlawful activity.

Exhibit   D

11

| Count | Payee | Check No. | Date | Amount |
|-------|-------|-----------|------|--------|
| 18 | Neiman Marcus | 4504 | 2/22/99 | $53,583.75 |
| 19 | Sterling Bank<br>Post Oak Motors | Acct. Debit<br>568344 | 3/30/99<br>3/30/99 | $51,253.92<br>$51,253.92 |
| 20 | Louis Vuitton | 5041 | 12/17/98 | $30,147.63 |
| 21 | Sterling Bank<br>American Title Co. | Teller Check<br>566425 | 8/3/98<br>8/3/98 | $80,000.00<br>$80,000.00 |

In violation of 18 United States Code, Section 1957.

**COUNT TWENTY TWO**
**(SSN Misuse - 42 USC 408(a)(7)(B))**

28.     On or about February 14, 1997 in the Southern District of Texas, **JOYCE LEE**

**HICKMAN**, Defendant herein, for the purposes of concealing her identity from a financial

institution, did willfully, knowingly, and with the intent to deceive, falsely represent

Social Security Account Number 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 to be the Social Security Account Number

assigned to her by the Commissioner of the Social Security Administration, when in fact

as the Defendant well knew, such number had not been assigned to her by said

Commissioner of the Social Security Administration.

In violation of Title 42, United States Code, Section 408(a)(7)(B).

Exhibit D

12

## COUNT TWENTY THREE
### (Criminal Forfeiture--18 U.S.C. § 982)

1.    The Grand Jury further alleges that, pursuant to Title 18, United States Code, Section 982, as a result of the offenses stated above,

**JOYCE LEE HICKMAN,**
**a.k.a. JOYCE SAUNDERS, and**
**TOTAL MEDICAL MANAGEMENT and**
**TMM MEDICAL GROUP**

shall forfeit to the United States of America all property which constitutes or is derived, directly or indirectly, from gross proceeds traceable to a violation of 18 U.S.C. § 1347; as well as any and all interest in property, real or personal, involved in a violation of 18 U.S.C. §1957, and any property traceable to such property, including but not limited to:

(a)    Approximately Forty nine thousand dollars in United States currency, and all interests and proceeds traceable thereto;

(b)    1912 CALUMET, HOUSTON, TEXAS (a tract of land 55 feet by 150 feet out of the Guiseppe Miceli 2.37 acre tract in the Joseph Christy Survey, Abstract No. 212, Harris County, Texas), and all rents or other income therefrom;

(c)    A 1989 Rolls Royce Silver Spur, VIN SCAZN02A8KCX26535;

(d)    One Lady's 18 Kt Yellow Gold Necklace set with 192 Round Brilliant Cut Diamonds weighing approximately 16.43 Carats - Original design by Jose Hess;

(e)    One Louis Vuitton Stokowski Desk Trunk Model M11040;

Exhibit D

2.    In the event that the above-described property, as a result of any act

or omission of

**JOYCE LEE HICKMAN,**
**a.k.a. JOYCE SAUNDERS, and**
**TOTAL MEDICAL MANAGEMENT and**
**TMM MEDICAL GROUP**

cannot be located upon the exercise of due diligence, has been transferred or sold to or

deposited with a third party, has been placed beyond the jurisdiction of the Court, has

been substantially diminished in value, or has been commingled with other property

which cannot be divided without difficulty, it is the intent of the United States of

America to seek the forfeiture of any other property of

**JOYCE LEE HICKMAN,**
**a.k.a. JOYCE SAUNDERS, and**
**TOTAL MEDICAL MANAGEMENT and**
**TMM MEDICAL GROUP**

up to the value of the above-described property, pursuant to Title 21, United States

Code, Section 853(p), made applicable to these offenses by Title 18, United States Code,

Section 982(b)(1)(A).

All in violation of Title 18, United States Code, Section 982.

A TRUE BILL

_____
FOREPERSON

DON CALVERT
Assistant United States Attorney

Exhibit D

14

## Exhibit E

1          The Government must prove each element of the

2 offense beyond a reasonable doubt.  It is not required to

3 produce either all evidence that may exist or particular

4 evidence.  However, you may draw conclusions from the

5 Government's failure to call witnesses or to introduce

6 exhibits shown by the evidence to be available.

7          A defendant's not having testified must not

8 be considered by you in any way or even discussed in your

9 deliberations.  The law does not require the Defendant to

10 prove her innocence or to produce any evidence at all.

11          A defendant must be found to have acted

12 knowingly and willfully.  "Knowingly" means that an act was

13 done voluntarily and not because of mistake or accident.

14 "Willfully" means an act was done with a conscious purpose to

15 violate the law.

16          A separate offense is charged in each count of

17 the indictment.  Each charge and the evidence about it must

18 be considered separately.

19          Finding the Defendant guilty or not guilty of

20 one offense must not affect your verdict on another offense.

21          22 should have been omitted.

22          The Defendant is not on trial for anything

23 she may have done other than those act described in the

24 indictment.

25          The law recognizes that, ordinarily, anything a

Exhibit E

1   person can do for herself she may also accomplish through

2   another person as her agent or by acting with another person

3   in a joint effort.   If a defendant accomplishes the elements

4   of the offense through another person, the Defendant is

5   equally as criminally responsible as if she had acted

6   herself.

7          Mere presence at the scene of a crime,

8   association with people involved in the crime or knowledge

9   that a crime is being committed is not sufficient to

10  establish the Defendant acted criminally unless you find

11  beyond a reasonable doubt that the Defendant was a

12  participant and not a knowing spectator.

13         The punishment for an offense is a matter

14  exclusively for the Judge and you must never consider it in

15  arriving at a verdict.

16         After you retire to the jury room, you will

17  select a foreman who may be of either sex.   You will then

18  deliberate.

19         It is the duty of the foreman to preside, write

20  sign and deliver to the marshal any message to me, vote with

21  the others, write your answers on the verdict form, and bring

22  the verdict back to the courtroom.

23         A juror who observes a violation of the Court's

24  instructions shall bring the error to the group's attention

25  and caution the juror to follow the instruction.

Exhibit E

1    You must not discuss the case with anyone, not
2  even the other members of the jury, unless all the jurors are
3  in the jury room.

4    When you have reached a decision and completed
5  the verdict form, summon the marshal and he will return you
6  to the courtroom.

7    The Defendant is presumed innocent.  If a
8  reasonable doubt remains in your minds after a fair
9  consideration of all of the evidence, you must acquit the
10  Defendant, finding her not guilty.

11    In this case, the charges against Hickman are
12  in two indictments.  That there are two sets of charges does
13  not mean anything.  Do not discuss the peculiar way the
14  paperwork happened to have been done.  The counts will be
15  referred to as I-1 through I-17 for H-00-250 and II-1 through
16  II-15 through for H-01-376.

17    To establish that a defendant is guilty of
18  health care fraud, the Government must prove three things
19  beyond a reasonable doubt, that the Defendant knowingly
20  devised a plan; the purpose of the Defendant's plan was to
21  defraud, trick or cheat a health care benefits program out of
22  a direct economic benefit like money or property; and the
23  Defendant used or tried to use the plan to get paid from a
24  health care benefits program.

25    "Knowingly" means the Defendant acted with the

Exhibit E

1  specific intent to trick or cheat, ordinarily with the

2  purpose of causing a financial loss to another.

3          A "health care benefit program" is a public or

4  private operation furnishing people with medical money,

5  medicine, equipment or services. This includes companies

6  that manage, pay or record medical money, medicine, equipment

7  or services.

8          What must be proved beyond a reasonable doubt

9  is that the Defendant knowingly devised a scheme to defraud

10 people substantially similar to the scheme described in the

11 indictment and the use of the plan was closely related to

12 health care benefit programs.

13         A statement is fraudulent if it is about a

14 material fact, is known to be untrue or is made with reckless

15 indifference about its truth and is made with the intent that

16 another rely on it to his harm. A statement may be untrue

17 when it is a half truth or otherwise effectively conceals a

18 material fact. A fact is material when it would be important

19 to a reasonable person in deciding whether to engage in a

20 transaction.

21         Ms. LeCocq.

22     MS. LeCOCQ: Thank you, Your Honor.

23         Ladies and gentlemen, I submit that the

24 evidence has now shown that the Defendant in this case, Joyce

25 Hickman, has lied, cheated and stolen, essentially defrauded,

NORTHERN DIST. OF TX.
FT WORTH DIVISION

2011 JUN 24  AM 11: 58

CLERK OF COURT

Joyce Hickman #88369-079
Carswell Federal Medical Center
P.O. Box 27137
Fort Worth, Tx 76127

"This correspondence is from
an inmate in the custody of
the Federal Bureau of Prisons"

✾88369-079✾
US Distric Court Northern Tx
501 West 10th Street
Room 310
FORT Worth, TX - 76102
United States